# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| **STEPHEN C. RICHARDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  6:12-CV-0383-VEH** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER,** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION[1]

Plaintiff Stephen C. Richardson ("Mr. Richardson") brings this action under

42 U.S.C. § 405(g), § 205(g) of the Social Security Act.  Mr. Richardson seeks review

of a final adverse decision of the Commissioner of the Social Security Administration

("Commissioner"), who denied his application for Disability Insurance Benefits

---

[1] The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2]  Mr. Richardson timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Richardson was twenty-eight years old at the time of his hearing before the Administrative Law Judge ("ALJ").  (Tr. 154 ).  He has completed high school and has attended three years of trade school classes. (Tr. 51-52).   His past work experience includes employment as a construction laborer, security guard, tree mechanic as well as restaurants and gas station positions.  (Tr. 43-44, 46-47, 54-57).   Mr. Richardson claims he became disabled on January 31, 2009, due to blindness in the left eye, attention deficit hyperactivity disorder ("ADHD"), and mild mental retardation.[4] (Tr. 21).  His last period of work ended on January 31, 2009. (*Id.*).

On March 25, 2009, Mr. Richardson filed a Title II application for a period of disability and DIB.  (Tr. 19).  He also protectively filed a Title XVI application for

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[4] As discussed *infra*, the terminology now used by the Commissioner is "intellectual disability" as opposed to "mental retardation".

SSI on that date.  *Id.*  On June 12, 2009, the Commissioner initially denied these claims.  (Tr. 19).  Mr. Richardson timely filed a written request for a hearing on June 16, 2009.  *Id.*  The ALJ conducted a video hearing on the matter on February 22, 2011.  *Id.*; (Tr. 38).

On May 13, 2011, the ALJ issued his opinion concluding Mr. Richardson was not disabled and denied him benefits.  (Tr. 19-27).  Mr. Richardson timely petitioned the Appeals Council ("AC") on June 3, 2011, to review the ALJ's decision.  (Tr. 14).  On January 18, 2012, the AC declined to review his disability claims, which rendered the ALJ's determination the final action of the Commissioner.  (Tr. 1).

Mr. Richardson filed a complaint with this court on February 6, 2012, seeking review of the Commissioner's determination. (Doc. 1).  With the parties having fully briefed the matter, the court has carefully considered the record and remands the decision of the Commissioner for further development.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of July 11, 2013.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be

found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers.  *See Foote*, 67 F.3d at 1559 ("The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy.").

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ makes the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.  (Tr. 21).

2.     The claimant has not engaged in substantial gainful activity since January 31, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).  (Tr. 21).

3.     The claimant has the following severe impairments:  left eye blindness, attention deficit hyperactivity disorder, and mild mental retardation (20 CFR 404.1520(c) and 416.920(c)).  (Tr. 21).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. 22).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full

range of work at all exertional levels but with the following non-exertional limitations:  the claimant can understand and remember simple instructions and work procedures but will often have difficulty with detailed instructions. He can carry out simple tasks but will have some difficulty completing complex ones. The claimant should be able to concentrate and attend to simple tasks for 2 hours and will need all customary rests and breaks. The claimant could tolerate ordinary work pressures but should avoid excessive workloads, quick decision-making, rapid changes and multiple demands. Contact with the public, coworkers, and supervisors should be casual. Criticism and feedback should be non-confrontational and supportive. The claimant could adapt to infrequent well-explained changes. The claimant would need assistance with long-term goal planning. The claimant is unable to climb ladders, rope, or scaffold due to blindness in the left eye. He should also avoid unprotected heights and dangerous conditions due to his vision. The claimant's visual deficits also prevent him from performing jobs which require reading and writing.  (Tr. 23-24).

6.    The claimant is capable of performing past relevant work as an industrial cleaner and security guard. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).  (Tr. 26).

7.    The claimant has not been under a disability, as defined in the Social Security Act from January 31, 2009, through the date of this section (20 CFR 404.1520(f) and 416.920(f)).  (Tr. 26).

## **ANALYSIS**[6]

## I.    INTRODUCTION

The court may reverse a finding of the Commissioner if it is not supported by

---

[6]  The undersigned has rendered a comparable decision from which the framework, analysis, and disposition of this case, in part, persuasively flow.  *See generally Thursby v. Astrue*, No. 6:08-CV-2139-VEH (Docs. 12, 13) (N.D. Ala. Dec. 1, 2009).

substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7]  However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]."  *Id.* (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

The Commissioner may also be reversed if the record shows that she has failed to follow the proper legal framework.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) ("We review the Commissioner's decision to determine if it is supported by substantial evidence <u>and based on proper legal standards</u>.") (emphasis added).  Moreover, in contrast to the substantial evidence standard, "[n]o similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999 (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)).

Mr. Richardson urges this court to reverse the Commissioner's decision to deny his benefits on the grounds that the ALJ does not adequately address his claimed

---

[7]  *Strickland* is binding precedent in this Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

disabled status under either subpart B or, alternatively, subpart C of Listing 12.05, the intellectual disability Listing.[8]  (Doc. 8 at 13).  If Mr. Richardson is correct about the ALJ's failure to follow the proper framework for evaluating whether he satisfies the intellectual disability Listing, then Mr. Richardson would potentially satisfy step three of the five step evaluation process and would be disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(iii).

## II.   THE ALJ'S DECISION FAILS TO FOLLOW THE PROPER LEGAL FRAMEWORK.

To meet a Listing, a claimant must have a medical diagnosis expressly recognized by the Listings and must provide medical reports documenting that such condition meets the specific criteria of the applicable Listing and the duration requirement.  *See* 20 C.F.R. § 404.1525(a)-(d).  To equal a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."  *See* 20 C.F.R. §§ 404.1526(a), 416.926(a).  The claimant has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

Mr. Richardson primarily asserts that he does in fact meet the requirements of subpart B of Listing12.05 because he has a full scale IQ of 59, which score the ALJ

---

[8]  Listings are contained in 20 C.F.R. § 404, Subpart P, Appendix 1.

has not indicated is invalid or, alternatively, has not adequately discredited.  (Doc. 8 at 13).  Further, Mr. Richardson asserts that the onset date of his mental condition occurred before reaching the age of 22.  (Doc. 8 at 14).  Finally, Mr. Richardson contends that he satisfies the standards applicable under subpart C of Listing 12.05. (Doc. 8 at 17).

Those portions of Listing 12.05 that are relevant to Mr. Richardson's appeal provide as follows:

12.05. Intellectual disability:  Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A. . . .

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. . . . .

20 C.F.R. § 404, Subpart P, Appendix 1, § 12.05.

Subpart A of § 12.00 similarly describes the framework for evaluating a Listing

claim premised upon intellectual disability:

> The structure of the listing for intellectual disability (12.05) is different
> from that of the other mental disorders listings. Listing 12.05 contains
> an introductory paragraph with the diagnostic description for intellectual
> disability. It also contains four sets of criteria (paragraphs A through D).
> If your impairment satisfies the diagnostic description in the
> introductory paragraph and any one of the four sets of criteria, we will
> find that your impairment meets the listing. Paragraphs A and B contain
> criteria that describe disorders we consider severe enough to prevent
> your doing any gainful activity without any additional assessment of
> functional limitations. For paragraph C, we will assess the degree of
> functional limitation the additional impairment(s) imposes to determine
> if it significantly limits your physical or mental ability to do basic work
> activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c)
> and 416.920(c). If the additional impairment(s) does not cause
> limitations that are "severe" as defined in §§ 404.1520(c) and
> 416.920(c), we will not find that the additional impairment(s) imposes
> "an additional and significant work-related limitation of function," even
> if you are unable to do your past work because of the unique features of
> that work. Paragraph D contains the same functional criteria that are
> required under paragraph B of the other mental disorders listings.

20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00A.

Thus, as the Eleventh Circuit has summarized: "To be considered for disability

benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Further, the court may look to more than one portion of the record when determining whether the claimant meets the Listing. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (acknowledging that a valid IQ score need not be conclusive of intellectual disability, when the IQ score is inconsistent with the other evidence in the record concerning the claimant's daily activities and behavior).

### A.     The IQ Requirement of Subpart B to Listing 12.05

#### 1.     If valid and not adequately discounted by the ALJ, Mr. Richardson's full scale IQ score meets subpart B of Listing 12.05.

Subpart B of Listing 12.05 demands that Mr. Richardson have an IQ of 59 or less.  20 C.F.R. § 404, Subpart P, Appendix 1. The IQ requirement of Listing 12.05 is determined by looking at the lowest score derived from a valid IQ test.  *See Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (indicating that reliance upon lowest IQ score is appropriate when evaluating IQ requirement under Listing 12.05); 20 C.F.R. Part 404, Subpt. P, App. 1, §12.00D.6.c.

Mr. Richardson's IQ test was administered by Dr. Alan D. Blotcky ("Dr. Blotcky") and determined by using the Wechsler Adult Intelligence Scale Fourth Edition ("WAIS-IV").  (Tr. 253).  The test results showed that Mr. Richardson has a verbal comprehension index of 61, a perceptual reasoning index of 63, a working memory index of 71, a processing speed index of 65, and a full scale IQ of 59. Therefore, Mr. Richardson's lowest IQ score is the full scale one of 59, which falls within the required range of subpart B to Listing 12.05. *See, e.g., Popp*, 779 F.2d at 1499 ("In addition, [the listing] provides that, where more than one IQ level is derived from the testing, *e.g.*, verbal, performance and full IQ's from WAIS testing, the lowest of these should be used in conjunction with 12.05.").

### 2.    <u>The ALJ does not dispute the validity of Mr. Richardson's IQ testing results.</u>

Subparagraph 6 (relating to intelligence tests) of paragraph D (addressing acceptable documentation) of § 12.00 (covering mental disorders generally) states in part:

> The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with developmental history and the degree of functional limitation. . . .

13

> Standardized intelligence test results are essential to the adjudication of all cases of intellectual disability that are not covered under the provisions of 12.05A. . . .
>
> In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.

20 C.F.R. Part 404, Subpt. P, App. 1, §§ 12.00D.6.a, 12.00D.6.b, 12.00D.6.c.

Thus, to have a valid IQ score, a standardized intelligence test must be used and the results from the standardized test must be accompanied by a narrative report. A standardized intelligence test is one that is generally accepted in the medical community as a scientifically valid test in terms of reliability and accuracy, such as the WAIS. *See, e.g., Popp*, 779 F.2d at 1499 ("The listing further provides that the WAIS test is a well standardized comprehensive intelligence test appropriate to such determination.").

As pointed out above, Dr. Blotcky's narrative report indicates that he administered the WAIS-IV on Mr. Richardson. (Tr. 253). Further, there is nothing in the record to suggest that Mr. Richardson manipulated his IQ testing results. In fact, to the contrary, Dr. Blotcky's report expressly states "[Mr. Richardson] was motivated during this exam [and] [h]is test scores are valid." (Tr. 254).

14

However, at no point in the ALJ's discussion of Mr. Richardson's inability to satisfy subpart B of Listing 12.05, does he state that Mr. Richardson's IQ score of 59 is a valid test score.  (Tr. 22-23).  At the same time, the ALJ does not dispute the legitimacy of Mr. Richardson's IQ testing results as reported by Dr. Blotcky.  *Id.*

Instead, the ALJ recognizes in his decision that "the evidence does show the claimant to have been diagnosed with mild mental retardation after obtaining a full-scale IQ score of 59."  (Tr. 22).  Further, the ALJ identifies mild mental retardation as one of Mr. Richardson's severe impairments.  Given these findings, the ALJ appears to have implicitly accepted Mr. Richardson's IQ score of 59 as valid.

However, the court concludes that such speculation on its part is inappropriate when a claimant has linked his alleged disabled status to the intellectual disability Listing.  For example, as an unpublished Eleventh Circuit panel has indicated, the failure of an ALJ to expressly address the validity of a claimant's IQ score is a critical omission:

> "Although the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an IQ score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the IQ score as valid and finds that the claimant meets or equals the criteria of a listed impairment." *Lowery*, 979 F.2d at 837.  It is therefore critical that an ALJ specifically address and resolve the validity of an IQ score; if the IQ score is valid and meets or equals the criteria of a listed impairment, the ALJ can go no further.  However, if

> the ALJ determines that the IQ score is not valid, then the ALJ must go
> further.
>
> In this case, the ALJ did not specifically address the validity of
> Thomas's I.Q. score of 69. "Generally, a reversal with remand to the
> Secretary is warranted where the ALJ has failed to apply the correct
> legal standards. This court, however, may reverse the judgment of the
> district court and remand the case for an entry of an order awarding
> disability benefits where the Secretary has already considered the
> essential evidence and it is clear that the cumulative effect of the
> evidence establishes disability without any doubt." *Davis v. Shalala*,
> 985 F.2d 528, 534 (11th Cir. 1993).

*Thomas v. Barnhart*, No. 04-12214, 2004 WL 3366150, at *2-3 (11th Cir. Dec. 7, 2004) (emphasis added).[9]

Additionally, the Eleventh Circuit has clarified that although the ALJ is allowed some leeway when evaluating a Listing related to intellectual disability, an ALJ may not consider a claimant's age, education, and work experience once the ALJ accepts an IQ score as valid. *See Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984) ("Consideration of the fact that [claimant] could return to her past work is not a relevant inquiry once she has met the Listing of Impairments in Appendix 1.").

Accordingly, the Commissioner's decision is due to be remanded because the ALJ fails to state with any clarity his position with respect to the validity of Mr.

---

[9] In the Eleventh Circuit, "[u]npublished decisions are not binding precedents, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Richardson's IQ score of 59.

### 3. The ALJ has not shown good cause to reject Mr. Richardson's IQ score.

To the extent that the ALJ has implicitly accepted Mr. Richardson's IQ results as valid, the Eleventh Circuit "has recognized that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837 (citing *Popp*, 779 F.2d at 1499). For example, consideration of other evidence such as a claimant's contrasting daily activities, atypical behavior, and educational achievements is appropriate. *See Popp*, 779 F.2d at 1499 ("Moreover, the test results must be examined to assure consistency with daily activities and behavior."); *id.* ("Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact mentally retarded.").

However, while the ALJ is not required to accept the results of an IQ test as reported by an expert, the ALJ "cannot act as both judge and physician." *See Durham v. Apfel*, 34 F. Supp. 2d 1373, 1380 (N.D. Ga. 1998) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992)). Put differently, substantial evidence must support the ALJ's discounting of an IQ score that is favorable to a claimant.

17

Here, the court cannot decipher how the ALJ has adequately discredited Mr. Richardson's IQ score.  While acknowledging Mr. Richardson's full scale IQ score of 59 and Dr. Blotcky's finding that Mr. Richardson has been mildly retarded since early childhood,[10] the ALJ still concludes that Mr. Richardson "does not meet the mental retardation listing because he does not have deficits in adaptive functioning required by that listing."  (Tr. 22).

More specifically, the ALJ suggests that "[d]espite his IQ scores, the claimant's impairment fails to meet the severity of either paragraph of this listing because the evidence does not show the claimant is dependent upon others for personal needs, toileting, eating, dressing, or bathing."  *Id.*  The ALJ then identifies certain activities that Mr. Richardson routinely engages in, including "doing chores, preparing simple meals, watching television, and taking short walks."  (Tr. 22-23).

However, in attempting to make the point that Mr. Richardson's IQ score fails to meet the level needed for subpart B of Listing 12.05, the ALJ confusingly refers to language that specifically appears only in subpart A.[11]  The ALJ then follows this

---

[10]  The court acknowledges that the ALJ does later in his decision assign little weight to Dr. Blotcky's findings as being "inconsistent with the evidence of record as a whole."  (Tr. 25).  However, this statement is made in conjunction with assessing Mr. Richardson's RFC and, regardless, does not cure the ALJ's insufficient treatment of Mr. Richardson's IQ score at the Listing step of his analysis.

[11]  Subpart A of Listing 12.05 premises the requisite level of severity upon "[m]ental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing,

misguided effort with a paragraph that mistakenly addresses Mr. Richardson's inability to satisfy subpart D of Listing 12.05.[12]  (Tr. 23).

Furthermore, nowhere does the ALJ expressly indicate that he is discounting or rejecting Mr. Richardson's otherwise implicitly accepted valid IQ score of 59.  *Cf. Popp*, 779 F.2d at 1499-1500 (ALJ's finding performance IQ score of 69 to be incredible for a claimant who "was close to completing the requirements for a bachelor of science degree and had a history of having taught high school algebra"). Therefore, the court is faced with an ambiguous record as it cannot verify whether the ALJ has undergone "a *Popp v. Heckler* -style analysis of the inconsistency between [Mr. Richardson]'s I.Q. score and evidence of his daily activities, behavior . . . . " *Lowery*, 979 F.2d at 837.

Accordingly, the Commissioner's decision is alternatively due to be remanded because the ALJ fails to adequately discount Mr. Richardson's IQ score of 59 consistent with *Popp*, *Lowery*, and other binding Eleventh Circuit decisions.

---

or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded[.]" 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.05A.  Mr. Richardson is not pursuing a disability claim under subpart A of Listing 12.05.

[12]  Mr. Richardson is not pursuing a disability claim under subpart D of Listing 12.05.

**B.**     **The Diagnostic Requirement of 12.05**

In addition to meeting the IQ requirements of subpart B to Listing 12.05, a claimant must also satisfy the diagnostic description included in the introductory paragraph of Listing 12.05. 20 C.F.R. Part 404, Subpt. P, App. 1, §12.00A (stating that under Listing 12.05, "[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). The introductory section to Listing 12.05 defines intellectual disability as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In the Eleventh Circuit, a person's IQ is presumed to remain constant throughout life, so "[a] valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two." *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1287 (N.D. Ala. 2007) (citing *Hodges v. Barnhart*,

276 F.3d 1265, 1268-69 (11th Cir. 2001)).[13] "The requirement that mental retardation or low IQ began prior to age 22 is met when nothing in the record reflects an incident in which claimant suddenly became mentally retarded." *Durnham v. Apfel*, 34 F. Supp. 2d 1373, 1381 (N.D. Ga. 1998) (citing *Gant v. Sullivan*, 773 F. Supp. 376, 382 (S.D. Fla. 1991)).

Against this backdrop, because no evidence of a sudden occurrence resulting in Mr. Richardson's mental deficits exists in the record, he benefits from the rebuttable presumption relating to the diagnostic requirement of Listing 12.05. Relatedly, nothing in the ALJ's decision adequately explains why Mr. Richardson is not entitled to benefit from, this rebuttable presumption relating to the diagnostic definition of Listing 12.05.[14]

Instead, the ALJ appears to have rejected this presumption on the grounds that the "record does not reflect the onset of mental retardation prior to age 22 as no school records or early psychometric testing have been provided to indicate such a

---

[13] In *Hodges*, the court formally recognized the presumption that "[w]hen a claimant presents a valid IQ score meeting the [§ 12.05] Listing criteria, the claimant is presumptively disabled under the Listing if the other requirements of the Listing have been met." *Jones v. Astrue*, 494 F. Supp. 2d at 1288 (citing *Hodges*, 276 F.3d at 1269). Before *Hodges*, the presumption had not been formally recognized, but the Eleventh Circuit had implicitly embraced it in *Lowery*, 979 F.2d at 837. *See Hodges*, 276 F.3d at 1269.

[14] Indeed, the court does not see where the ALJ even mentions the rebuttable presumption in his decision.

finding." (Tr. 22). This dubious conclusion reached by the ALJ ignores Dr. Blotcky's opinion that Mr. Richardson's subaverage mental functioning has existed "since early childhood" (Tr. 254), and the fact that Mr. Richardson's "school records are unavailable not due to any fault of the claimant, but only because his school and those school records were destroyed by fire." (Doc. 8 at 16); (*see* Tr. 51 ("I was trying to get my school - - all my records from my school, but my school burnt.")). Additionally, to the extent that the ALJ relies upon Mr. Richardson's adaptive functioning in an effort to show he does not meet the diagnostic criteria, that fails for the same reasons that the unclear analysis provides an insufficient basis for discounting his IQ score.

Accordingly, the Commissioner's decision is alternatively due to be remanded because the ALJ does not adequately address the rebuttable presumption that is applicable to the diagnostic requirement of Listing 12.05.

### C.   The ALJ Fails to Consider if Mr. Richardson Meets Subpart C of Listing 12.05.

Subpart C of Listing 12.05 demands that the claimant have "'[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *Jones,* 494 F. Supp.2d 1284, 1287 (citing *Davis v. Shalala*, 985 F.2d 528,

531 (11th Cir. 1993) (quoting subpart C of Listing 12.05)).

Here, the ALJ concludes that Mr. Richardson suffers from mild mental retardation, blindness of the left eye, and ADHD.  (Tr. 21). Thus, Mr. Richardson might meet the criteria under subpart C of Listing 12.05.

However, the ALJ does not ever analyze Mr. Richardson's status under subpart C of Listing 12.05.  (Tr. 22-23).  Further, even assuming that the ALJ has properly discounted Mr. Richardson's IQ score of 59, then he should have still addressed whether Mr. Richardson's reduced IQ result would have fallen within the 60 to 70 range necessary to satisfy subpart C.  Finally, because the ALJ finds that Mr. Richardson's ADHD and left eye blindness are serious conditions, the ALJ's decision already confirms that Mr. Richardson meets the second prong of subpart C to Listing 12.05.

Accordingly, the Commissioner's decision is alternatively due to be remanded because the ALJ does not in any manner address whether Mr. Richardson satisfies the requirements of subpart C to Listing 12.05.

## CONCLUSION

The ALJ correctly finds that Mr. Richardson has satisfied steps one and two of the five-step sequential evaluation process.  However, under step three, the ALJ fails to follow the proper legal framework when rendering his decision that Mr.

Richardson does not meet either subpart B or, alternatively, subpart C of Listing 12.05.

Therefore, based upon the court's evaluation of the evidence in the record and the submissions of the parties, this court finds that the Commissioner's final decision is due to be reversed and remanded.  Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 16th day of August, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge